MICHAEL RABKIN (ILRN 6293597)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
michael.rabkin@usdoj.gov
Telephone: (415) 934-5300

Attorney for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 13-00730 PJH |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1** |
| v. | |
| CHUOKEE BO, | Date: December 1, 2017 |
| Defendant. | Time: 9:00 a.m. |
| | Court: Hon. Chief Judge Phyllis J. Hamilton |

The United States respectfully requests that this Court sentence defendant Chuokee Bo to (1) serve a six-month custodial sentence, based on the government's motion for a downward departure of 30% from the low end of the Guidelines range for substantial assistance; (2) serve three years of supervised release; and (3) pay a criminal fine of $4,000, restitution in the amount of $13,219, and a $100 special assessment. This sentence is consistent with the parties' Fed. R. Crim. P. 11(c)(1)(A) and (B) plea agreement.

## BACKGROUND

Defendant Chuokee Bo is a real-estate investor who participated in the bid-rigging conspiracy at the Alameda County foreclosure auctions beginning as early as August 2009 and continuing until in or about October 2010. Plea Agreement, *United States v. Chuokee Bo,* No.

CR 13-00730 (Dkt. 34) (N.D. Cal. filed Jan. 4, 2017).

After graduating from college in 1985, Bo spent the first 16 years of his professional life working in the tech industry, first at Apple and then for Handspring.  Presentence Report ("PSR") ¶ 8.  After resigning from Handspring in 2001, he decided at to transition to a career in real estate and began working full time as a real estate agent.  *Id.* In 2005, he obtained a mortgage brokers license and formed two companies, Harvest Investments and Harvest Financial, to handle real estate and mortgage loans, respectively.  *Id.*

Bo first began attending the Alameda County trustee sales in approximately August 2009 as an observer, in an effort to learn as much as he could about the auctions.  *Id.* ¶ 9.  After attending several auctions, Bo began attending the sales with the intent to purchase property.  *Id.* Bo initially had difficulty purchasing property and accepted an offer from another auction participant, Robert Rasheed (a defendant in a related case who was convicted at trial), to purchase a property on Bo's behalf in exchange for a fee of $5,000.  *Id.*  Rasheed won the auction on behalf of Bo and then told Bo that Bo owed him an additional $1,600 for a round that had been conducted on the property.  *Id.*  Bo did not know what a round was until after Rasheed had won the round on Bo's behalf.  *Id.*

Bo subsequently participated in rounds on 15 properties.  *Id.* ¶ 10.  Of those 15 rounds, he purchased three properties.  *Id.*  The plea agreement obligates him to pay $13,219 in restitution, which corresponds to a portion of the payoffs that he received through the conspiracy.  *Id.*  The parties stipulated to an $841,750 Volume of Commerce.  *Id.*

Bo was initially interviewed by the FBI in April 2011.  *Id.* ¶ 11.  During that interview, he was forthcoming and admitted that he had been part of agreements to stop bidding at the public auction and that he had participated in rounds.  *Id.*  He also acknowledged that rounds are wrong.  *Id.*  Defendant later met with the FBI for two additional interviews.

Defendant was charged by Information in November 2013 with one count of bid rigging (15 U.S.C. § 1) and one count of conspiracy to commit mail fraud (18 U.S.C. § 1349), and pleaded guilty to both counts in December 2013.  Dkt. 1, 7, 8.  Those pleas were later withdrawn by stipulation, and in January 2017, defendant pleaded guilty before the Honorable Magistrate

Judge Westmore to the bid-rigging charge only, pursuant to a revised plea agreement.  Dkt. 26, 27, 28, 30.  The Court adopted the Report and Recommendation accepting defendant's guilty plea and reserved ruling on whether it would accept the plea agreement, pending receipt of the presentence report.[1]  Dkt. 31.

## ARGUMENT

### A.   Sentencing Guidelines Calculations

#### 1.   Criminal History

In Paragraph 12 of the Plea Agreement, the parties agree that defendant's Criminal History Category will be determined by the Court.  The PSR calculates defendant's Criminal History Category as I, based on the lack of any prior criminal history, and the United States agrees.  PSR ¶ 29.

#### 2.   Offense Level

The PSR calculates the total offense level as 11, consistent with the plea agreement.  *Id.* ¶ 24.  This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids and a downward adjustment of two levels for acceptance of responsibility.  U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(b)(1), 3E1.1 (U.S. Sentencing Comm'n 2010).  Under the Sentencing Guidelines, an offense level of 11 for a defendant in Criminal History Category I results in a sentence ranging from 8 to 14 months (Zone B).

#### 3.   Fine and Restitution

The PSR calculates a fine range of $20,000 to $42,807, consistent with the plea agreement.  PSR ¶ 57; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000).  In Paragraph 9 of the plea agreement, the government agrees to recommend a fine between $4,000 and $40,000.  (This fine range was initially agreed to by the parties in the original plea agreement, based on the application of the fraud Guidelines, and was carried over to the revised plea agreement.)

---

[1]  Because the plea agreement is consistent with the Guidelines calculation contained in the PSR, the government will make a motion for the Court to accept the plea agreement and dismiss the mail-fraud count (Count Two of the Information) at the sentencing hearing.

As for restitution, while the Mandatory Victim Restitution Act, 18 U.S.C. § 3663, does not apply to this case, restitution is permitted under 18 U.S.C. § 3583(d) (restitution as discretionary condition of supervised release).  In Paragraph 11 of the plea agreement, the parties agreed to recommend that the Court order defendant to pay restitution in the amount of $13,219.

**B.**     **Basis for Downward Departure for Substantial Assistance**

The government moves, pursuant to Section 5K1.1 of the Guidelines, for a downward departure for substantial assistance to the investigation under the Rule 11(c)(1)(B) plea agreement in this case.  The government recommends a 30% reduction from the low end of the Guidelines range of eight months, resulting in a sentence of approximately six months.

This recommendation is based on a number of different factors.  First, a significant consideration is the timing of defendant's decision to plead guilty and cooperate.  Defendant agreed to plead guilty in 2013, in the middle of the investigation and over a year before any of his coconspirators were indicted by the grand jury.  More than a dozen individuals decided to plead guilty and cooperate after defendant's guilty plea.

The government's recommendation is also based on the extent and value of the information provided by defendant.  After he was initially interviewed by the FBI in April 2011, Defendant sat for two debrief interviews with the government in May 2015 and March 2017. During those interviews, defendant provided corroborating information regarding the operation of the conspiracy, authenticated various records of the rounds and payoffs, and provided an account of various targets' conduct in furtherance of the conspiracy.  These interviews did not, however, result in any new investigative leads or the discovery of new evidence.

Another consideration underlying the government's recommendations in these cases is the extent to which a defendant assisted the government at trial.  Bo was identified as a potential trial witness but did not testify in any of the six trials.

Based on the foregoing, a 30% reduction for substantial assistance is appropriate.

**C.**     **Sentencing Recommendation**

The government's recommendation of a six-month sentence is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553.  Defendant's sentence

should reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally, as the government has argued in the related cases.

Defendant profited directly from the fifteen rigged auctions that he participated in, both by receiving over $13,000 in payoffs and by being able to buy over $840,000 worth of properties at discounted prices through suppressed bidding at the public auctions.  Given the magnitude of the financial harm caused by defendant's conduct, the government's recommendation, which includes a custodial term, is appropriate and consistent with the commentary in the applicable Guidelines.

The government recognizes, however, that defendant was truthful when he was first interviewed by the FBI, has expressed remorse for his role in the offense, chose to cooperate with the government's investigation, is a first-time offender, and has agreed to pay restitution. While the government is recommending custody here, as it has in all the related cases, these factors have led this Court to impose probationary sentences for similarly-situated defendants.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court sentence defendant Chuokee Bo to (1) serve a six-month custodial sentence; (2) serve three years of supervised release; and (3) pay a criminal fine of $4,000, restitution in the amount of $13,219, and a $100 special assessment.

Dated: November 22, 2017                           Respectfully submitted,

                                                   /s/ MICHAEL RABKIN
                                                   United States Department of Justice
                                                   Antitrust Division